UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ELIZABETH B.,[1]

Plaintiff

-vs-

DECISION and ORDER

6:24-CV-06683-CJS

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied Plaintiff's application for Social Security Disability Insurance ("DIB") benefits and Supplemental Security Income ("SSI") benefits. Plaintiff maintains that such determination must be reversed since it contains errors of law and is unsupported by substantial evidence, as more specifically set forth below. Now before the Court is Plaintiff's motion for judgment on the pleadings (ECF No. 9) and Defendant's cross-motion for the same relief (ECF No. 12). For reasons discussed below, Plaintiff's application is granted, Defendant's application is denied, and the matter is remanded to the Commissioner of Social Security for further administrative proceedings.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim. In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court

---

a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [(“]ALJ[)”]. Failure to apply the correct legal standards is grounds for reversal.”) (citation omitted).

If the Commissioner applied the correct legal standards, the court next “examines the record to determine if the Commissioner's conclusions are supported by substantial evidence.” *Tejada v. Apfel*, 167 F.3d at 773; *see also*, 42 U.S.C.A. § 405(g) (“The findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive.”). Substantial evidence is defined as “more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” *Tejada v. Apfel*, 167 F.3d at 773 (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the ‘clearly erroneous’ standard, and the Commissioner’s findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise.” *Brault v. Social Sec. Admin., Comm’r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). “An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered.” *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) (“While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude*

*otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court also may not rely on any *post hoc* rationalizations offered by

the Commissioner, but it may consider evidence that was evidently considered by the Administrative Law Judge (“ALJ") even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (“When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale “in relation to evidence in the record,” we would not remand where “we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.” *Id*.[; [s]*ee also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) (“Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....”).”); *see also*, *Loni S. v. Comm'r of Soc. Sec*., No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) (“The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) (‘[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.’).”).

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action. Briefly, Plaintiff filed applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"), claiming to be disabled as of July 27, 2022, due to a combination of impairments including chronic obstructive pulmonary disorder ("COPD"), lumbar degenerative disc disease, osteoarthritis, Type II Diabetes Mellitus ("Diabetes"), obesity, depression, and anxiety.

In connection with that application the Commissioner had Plaintiff undergo a consultative internal medicine examination with Justine Magurno, M.D. ("Magurno"). Tr. 660-665. Magurno noted that Plaintiff had uncontrolled diabetes, first diagnosed in 2014, which, according to Plaintiff's description, was beginning to cause diabetic neuropathy in her feet. Tr. 660 ("Neuropathy is starting. She feels numbness and tingling in her toes."). Magurno further reported that Plaintiff had a ventral hernia, which Plaintiff claimed limited her ability to lift. Tr. 661. Upon examination, Magurno noted the following positive findings: Inability to walk on heels; able to squat only 1/3; ventral hernia; umbilical hernia; and trace pitting edema of left leg. Magurno's opinion was: "There are marked limitations squatting, lifting, and carrying. Moderate for bending, standing, and walking. Mild for reaching, pushing, pulling, and sitting. She should avoid pulmonary irritants and avoid unprotected heights." Tr. 664.

The Commissioner denied Plaintiff's claim initially based in part on the opinion of agency review physician S. Naroditsky, M.D. ("Naroditsky"), dated January 5, 2023. Naroditsky found that Plaintiff could occasionally lift ten pounds, frequently lift less than ten

pounds, and sit stand and/or walk for about six hours in an eight-hour workday. Tr. 137. When asked to explain the exertional limitations identified, Naroditsky wrote, "obesity" and "ventral/umbilical hernia." Tr. 137.

The Commissioner denied Plaintiff's claim again, on reconsideration, based in part on the opinion of agency review physician R. Abueg, M.D. ("Abueg") dated July 25, 2023. Tr. 145-153. Abueg's report noted that that Plaintiff was alleging a "new condition," diabetic neuropathy, as of September, 2022, about which Plaintiff had stated:

> I started noticing the toes on my left foot will start to feel numb and begin tingling, this can happen when sitting or lying down. My left ankle and leg will begin swelling throughout the day. My podiatrist believes it may be due to my Diabetes. (Diabetic Neuropathy). He has also prescribed medication for this.

Tr. 145. Abueg opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and sit stand and/or walk for about six hours in an eight-hour workday. Tr. 150. When asked, on the form that Abueg used, to explain how the medical evidence supported those findings, Abueg wrote, "see below," Tr. 150, apparently referring to a summary of medical evidence later in the same document. Tr. 151. However, as noted, the section to which Abueg apparently referred was a summary of evidence, not an explanation, which, incidentally, did not mention either Plaintiff's hernias or her diabetic neuropathy. Nor did Abueg's report otherwise explain how it arrived at its RFC finding, or why it found that Plaintiff's ability to lift and carry was greater than what Dr. Naroditsky had found.

Plaintiff subsequently requested a hearing before an ALJ. On March 21, 2024, ALJ Mary Jane Pelton conducted an online hearing at which Plaintiff attended accompanied by

her attorney representative, and both Plaintiff and a VE testified.

The record before the ALJ included functional assessments/opinions from Plaintiff's primary care physician, Kristine Perle, M.D. ("Perle"). Perle's first opinion, dated November 2, 2022, stated, in pertinent part, that Plaintiff's medical problems included "uncontrolled diabetes" and "ventral hernia," Tr. 65. Regarding the ventral hernia, Perle noted that it "limits physical activity." Tr. 657. Perle stated that Plaintiff was moderately limited in lifting between ten pounds and fifteen pounds, and very limited in lifting twenty pounds. Tr. 658. The opinion did not mention diabetic neuropathy. Perle's later opinion, dated April 20, 2023, indicated that Plaintiff could occasionally lift up to ten pounds, never lift twenty pounds, sit for about four or five hours per eight-hour workday, stand for one or two hours per eight-hour workday, and walk for one hour per eight-hour workday. Tr. 671. Perle apparently attributed those limitations primarily to Plaintiff's arthritis and obesity, since when asked to explain her findings, she wrote in pertinent part: "Pt has significant arthritis in multiple joints, particularly back, hips and knees that are necessary for mobility. This is documented by x-rays. Pt has morbid obesity that limits her mobility and increases her pain associated with her arthritis." Tr. 672. Perle's second opinion did not mention hernia or diabetic neuropathy.

The record before the ALJ also included treatment notes from Plaintiff's podiatrist, Joseph Hatef, D.P.M. ("Hatef"), Exhibit 18F, submitted to the Commissioner on or about November 7, 2023. Tr. 2679-2693. In office notes dated October 19, 2022, February 1, 2023, and March 30, 2023, Hatef reported that his neurological exams of Plaintiff's feet showed "evidence of peripheral neuropathy right, left, with loss of protective sensation,

right, left, nature of neuropathy forefoot numbness under the metatarsal heads bilateral." Tr. 2680, 2681, 2684. On March 30, 2023, Hatef further reported that Plaintiff was complaining "of neuropathy symptoms: pain, pins and needles, loss of sensation, difficulty walking, poor balance," for which Hatef prescribed Gabapentin. Tr. 2684. On June 26, 2023, Hatef noted that Plaintiff was seeing him for "diabetic foot care," a "chronic problem," and specifically noted "diabetic neuropathy" and "diabetic angiopathy." Tr. 2685. Hatef's examination found "mild evidence of peripheral neuropathy, right [and] left." *Id*. On August 14, 2023, Hatef reported that Plaintiff had "increasing neuropathy symptoms, burning, pins and needles. Keeps her up at night. Trophic changes, venous stasis changes noted." Tr. 2688.

Plaintiff testified at the hearing that she could lift ten pounds at most. Plaintiff also indicated, in a written statement to the Commissioner: "I cannot lift more than 5-10 pounds due to the abdominal pain, hernias, lower back pain and left shoulder pain, all fighting against me." Tr. 356. Plaintiff testified that her diabetic neuropathy felt as though her toes were numb and missing, and that someone was stabbing her in the bottoms of her feet. Tr. 108.

On May 1, 2024, the ALJ issued a decision denying Plaintiff's applications, finding that Plaintiff was not disabled at any time between the alleged disability onset date and the date of the ALJ's decision. Tr. 11-24. At step one of the sequential evaluation the ALJ found that Plaintiff had not engaged in SGA at any time during the relevant period. At step two the ALJ found that Plaintiff had severe impairments of COPD, degenerative disc disease, diabetes, arthritis, obesity, depressive disorder, and anxiety disorder. The ALJ

also found that Plaintiff had non-severe impairments of ventral/umbilical hernia, obstructive sleep apnea, and diabetic retinopathy. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Prior to reaching step four, the ALJ found that Plaintiff had the RFC to perform the exertional requirements of light work with postural and non-exertional limitations:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes, or scaffolds, she can occasionally climb ramps and stairs, and she can occasionally balance as defined by the Selected Characteristics of Occupations. Also, she can occasionally stoop and crouch, but never kneel or crawl, she can perform occasional overhead reaching and frequent reaching in other directions. She should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. The claimant can understand, remember, and carry out simple instructions. The claimant can use judgment to make simple work-related decisions. The claimant should work in a job with occasional changes in the routine work setting. The claimant cannot perform work requiring a specific production rate or perform work which requires hourly quotas. The claimant could have frequent interaction with supervisors and coworkers, and occasional interaction with the public.

Tr. 17. At step four the ALJ found that Plaintiff could not perform any of her past relevant work, but at step five the ALJ found that she could perform other jobs that exist in significant numbers in the national economy, as was therefore not disabled.

Regarding the RFC finding as it pertains to this action,[6] the ALJ explained, in pertinent part, as follows:

---

[6] Plaintiff has additional physical and mental impairments which the Court does not discuss here since they are not relevant to this action.

The claimant alleges the following conditions hinder her ability to work: Type II diabetes, diabetic neuropathy, chronic obstructive pulmonary disease, asthma, obstructive sleep apnea, . . . degenerative disc disease, as well as arthritis and hernias. (Exhibit 22E, page 1; Testimony). The claimant alleges chronic pain is exacerbated by sitting or standing for too long. (Exhibit 7E, page 1; Testimony).

***

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the objective medical evidence suggests the claimant's limitations are not as severe as alleged. Despite some positive findings for musculoskeletal pain, she generally appeared non-distressed when meeting with providers. (Exhibit 1F, page 8, 20, 25, 33, 39, 49, 54, 61, 94; Exhibit 7F, page 71, 102; Exhibit 11F, page 13; Exhibit 12F, page 21). In June 2023, she was admitted to the hospital with left arm and leg weakness and paresthesia, however, she did not have progression of symptoms and they seemed to have resolved for the most part prior to discharge the following day. (Exhibit 11F, page 12). During her hospitalization in June 2023, she had a normal gait, did not use an assistive device, she was able to climb up and down stairs without assistance, she had good balance, and she had independence in all functional mobility including transfers. (Exhibit 11F, page 32). During this same encounter, she had normal range of motion and full strength in her extremities. (Exhibit 11F, page 32). Moreover, she had a normal gait, normal stance, full strength in her upper extremities and lower extremities, full grip strength, and her hand and finger dexterity was intact during the consultative examination. (Exhibit 3F, page 4). Additionally, she generally had a normal gait and stance when meeting with providers. (Exhibit 1F, page 82; Exhibit 2F, page 156; ). It is also of note that part of the claimant's chiropractic treatment plan included walking daily. (Exhibit 19F, page 1).

The claimant has diabetes mellitus, and occasionally has had spikes in her A1C levels. However, she admitted to providers in June 2023 that she was not adhering to a good diet, and had not been taking her medication as prescribed. (Exhibit 11F, page 51). Similarly, in November 2022, she admitted she could do better with her diet and exercise. (Exhibit 1F, page 13). Despite her noncompliance with treatment recommendations, she has not experienced repeat hospitalizations or required an insulin pump for this condition. (Exhibit 7F; Exhibit 11F, page 52). Also, it is of note that she

reported in February 2023 that she was feeling much better with regard to her diabetes. (Exhibit 7F, page 42). In September 2023, her blood sugar improved with her current medication regimen. (Exhibit 12F, page 12). Generally, exams of her extremities were without cyanosis or edema. (*See, e.g.*, Exhibit 1F, page 15, 25,82, 94; 2F, page 156). The record shows that the claimant's diabetes mellitus has been described as being without complications. (*See, e.g.*, Exhibit 7F, page 8).

***

Her activities of daily living support the residual functional capacity. The claimant can drive and utilize public transportation. (Exhibit 10F, page 4; Exhibit 11F, page 31). She is able to cook, shower, and clean. (Exhibit 4F, page 3; Exhibit 10F, page 4). The claimant testified she can lift approximately ten pounds. Also, she is able to wash dishes four times a week. (Testimony). Additionally, she cleans twice a week and does laundry twice a week. (Exhibit 10F, page 4).

Some of the claimant's statements are inconsistent with her allegations. . . . In June 2023, she reported to providers that she was independent in her activities of daily living and that she utilizes both levels of her duplex home. (Exhibit 11F, page 31). During a chiropractic appointment in April 2023, she denied radiating pain, numbness, and weakness [in her lumbar spine]. (Exhibit 19F, page 1).

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources.

The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: The undersigned is persuaded by the prior administrative findings of state agency medical consultant Dr. Abueg (Exhibits 4A/6A) who found the claimant could perform light work, that she could occasionally climb ladders, ropes, or scaffolds, that she could frequently climbing ramps and stairs, she could frequently balance, stoop, kneel, and crouch, and she could occasionally crawl, but that she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Dr. Abueg has program knowledge and bases the opinions on reviews of the record, and supports the opinions with an explanation. Also,

Dr. Abueg's opinions are consistent with other evidence in the record, including that the claimant lives in a duplex home and is able to utilize both levels. (Exhibit 11F, page 31). It is also consistent with consultative examiner Dr. Magurno's observations that the claimant could get on and off the exam table without assistance, rise from a chair without assistance, and had negative straight leg raise test. (Exhibit 3F, page 4). Moreover, they are consistent with the claimant's arthritis, and hernia. (Exhibit 3F, page 2). As such, the undersigned finds that she can never climb ladders, ropes, or scaffolds, she can occasionally climb ramps and stairs, and she can occasionally balance as defined by the Selected Characteristics of Occupations. Also, she can occasionally stoop and crouch, but never kneel or crawl.

The undersigned is generally persuaded by the opinion of consultative examiner Dr. Magurno, who found marked limitations for squatting, lifting, and carrying, moderate limitations for bending, standing, and walking, and mild limitations for reaching, pushing, pulling, and sitting. (Exhibit 3F, page 5). Dr. Magurno further found she should avoid pulmonary irritants and avoid unprotected heights. (Exhibit 3F, page 5). Dr. Magurno has program knowledge and bases her opinion on an exam with explanation. Her opinion is generally consistent with the overall record, including the claimant's obesity, musculoskeletal pain, and COPD diagnosis. It is also consistent with the claimant's reduced shoulder rotation during the exam. (Exhibit 3F, page 4). However, the undersigned finds that the record does not support marked limitations for squatting, lifting, and carrying, as the claimant is able to drive a vehicle, and during the exam, she had full strength in all extremities, she could get on and off the exam table without assistance, rise from a chair without assistance, and had negative straight leg raise test. (Exhibit 3F, page 4). Therefore, the undersigned finds it appropriate to limit the claimant to work at the light exertional level, and provide for reaching restrictions, as well as environmental restrictions for respiratory irritants, in the residual functional capacity.

***

The undersigned is somewhat persuaded with the prior administrative finding of state agency medical consultant Dr. Naroditsky (Exhibit 2A) to the extent that it is consistent with and supported by the record. For example, Dr. Naroditsky found the claimant could perform less than a full range of light work, that she could lift and carry 10 pounds occasionally, less than 10

> pounds frequently, that she could perform unlimited climbing of ramps and stairs, she could frequently climb ladders, ropes, or scaffolds, she could perform unlimited balancing, stooping, kneeling, crouching, and crawling, and that she should avoid concentrated exposure to hazards. (Exhibit 2A, pages 10-11). Dr. Naroditsky's lifting and carrying limitations are more severe than other evidence in the record supports. For instance, the prior administrative findings of Dr. Abueg (Exhibits 4A and 6A) on reconsideration indicated the claimant could occasionally lift 20 pounds and could frequently lift 10 pounds. (Exhibit 6A, page 6). Also, the claimant had full strength of her upper and lower extremities during the consultative exam with Dr. Justine Magurno. (Exhibit 3F, page 4). Therefore, the undersigned finds it appropriate to limit the claimant's residual functional capacity such that she can [perform] light work.
>
> ***
>
> The undersigned is not persuaded by the medical opinion of treating source Kristine Perle, M.D. who identified moderate and extreme limitations in mental activities, as well as severe physical limitations, including restricting the claimant to very limited in her ability in lifting and carrying 20 pounds, stooping, kneeling, crouching, crawling. (Exhibits 2F, 5F, 6F and 14F). The opinions are in the form of a checkbox form without ties to clinical findings, they are not supported by the claimant's treatment history, nor are they consistent with other opinions in the record. For example, both opinions indicate that the claimant is very limited in her ability to stoop, kneel, crouch and crawl, but the claimant is able to drive in a car. (Exhibit 2F, page 6; Testimony; Exhibit 7E, page 2; Exhibit 14F, page 3).

Tr. 18-22.

Plaintiff appealed, but the Appeals Council declined to review the ALJ's decision, thereby making that decision the Commissioner's final decision.

On November 22, 2024, Plaintiff commenced this action, and on February 27, 2025, she filed the subject motion for judgment on the pleadings (ECF No. 9), essentially maintaining that the ALJ erred when making her RFC determination that Plaintiff could perform the exertional requirements of light work. *See*, Pl. Memo of Law, ECF No. 9-1 at p.

18 ("[T]he ALJ's RFC determination was flawed because her finding that [Plaintiff] can perform light work is at odds with the weight of the medical opinion evidence. Furthermore, the ALJ made an additional error at Step Five where she failed to consider any of the limitations from diabetic neuropathy in her RFC determination.").

More specifically, Plaintiff asserts, first, that the ALJ's evaluation of the medical opinion evidence was not in accordance with the Commissioner's regulations, and not supported by substantial evidence, inasmuch as the ALJ chose to rely on Abueg's "outlier" opinion that Plaintiff could lift and carry twenty pounds, rather than on the more-consistent opinions of Magurno, Naroditsky, and Perles, that Plaintiff could lift and carry only ten pounds:

> The outcome of this case likely hinged on the difference between the ability to lift 20 pounds versus the ability to lift only 10 pounds. The ALJ found that [Plaintiff] could perform a limited range of light work, which by definition, includes lifting and carrying up to 20 pounds. *See* 20 C.F.R. § 404.1567 (defining light work as generally involving lifting up to 20 pounds and sedentary work as generally involving lifting only 10 pounds). The ALJ's determination that [Plaintiff] can perform light work was erroneous because she relied on a single non-examining review physician's opinion, at the expense of three other opinions in the file—two of which were from examining sources—which supported a lifting limitation of only 10 pounds. Had the ALJ relied on the medical opinions of the three other physicians which supported the ability to lift only 10 pounds, which is characteristic of sedentary work, the ALJ would have been directed to find [Plaintiff] disabled.

ECF No. 9-1 at p. 17; *see also, id*. at p. 19 ("Rejecting three separate medical opinions in favor of one non-examining source is contrary to the rules for evaluating medical opinion evidence. The "most important" factors for evaluating medical opinion evidence are consistency and supportability. See 20 C.F.R. § 404.1520c(b)(2). Failure to adequately

explain the supportability and consistency factors will result in a remand.") (citations omitted).

Plaintiff maintains that in partially discounting the opinions of Magurno, Naroditsky and Perle, the ALJ also emphasized certain positive findings while ignoring contrary findings, and improperly relied on Plaintiff's ability to perform tasks that do not imply an ability to perform the exertional requirements of light work. *See, e.g., id*. at p. 21 ("[T]he activities of driving, rising from a chair, or living in a duplex do not implicate one's ability to lift, or provide medical evidence that [Plaintiff] possesses the physical ability to lift up to 20 pounds."); *id*. at p. 22 ("By noting activities that were mostly irrelevant to lifting, the ALJ manufactured an internal inconsistency in Dr. Magurno's opinion where none existed. In fact, Dr. Magurno's opinion was consistent with Dr. Perle's and Dr. Naroditsky's opinions regarding [Plaintiff's] ability to lift and carry.")

Additionally, Plaintiff maintains that the ALJ erred by failing to include any limitations in the RFC finding related to diabetic neuropathy:

> [T]he ALJ failed to make any ruling or any significant discussion as to [Plaintiff's] diabetic neuropathy. The ALJ's only mention of diabetic neuropathy was when she listed the impairments that [Plaintiff] alleged in her application. The ALJ found diabetes mellitus to be a severe impairment, but did not discuss how the symptoms resulting from [Plaintiff's] diabetic neuropathy impacted her RFC at Steps Four and Five. As noted below, symptoms affecting [Plaintiff's] feet include numbness, tingling, burning, and loss of sensation. An ALJ's RFC determination must incorporate all limitations from medically determinable impairments, both severe and non-severe.

ECF No. 9-1 at p. 26 (citations omitted); *see also, id.* at p. 28 ("The ALJ RFC's determination did not appear to include any limitation for neuropathy symptoms, or any

discussion as to why any such limitations were not supported. . . . The ability to stand or walk for most of the day would appear inconsistent with the reported symptoms of diabetic neuropathy[.]”).

Relatedly, Plaintiff contends that the opinions of Naroditsky and Abueg were stale at the time of the hearing, since they predated evidence submitted from Dr. Hatef regarding diabetic neuropathy:

> [T]he medical records from Steuben Podiatry, which most clearly documented the neuropathy, *see* R: 2679-2693, were not submitted until after the two state agency consultant opinions which had found no limitation in the ability to walk, namely the opinions of Dr. Naroditsky and Dr. Abueg. The records from Steuben Podiatry were submitted on March 7, 2024, see R: 2678, whereas Dr. Naroditsky’s opinion was submitted on January 5, 2023, see R: 142, and Dr. Abueg’s opinion was submitted on July 25, 2023. R: 153. See also R: 172, 176 (initial disability determinations stating “We were unable to obtain additional medical and non-medical reports from the following: Steuben Podiatry”). Accordingly, the state agency consultant opinions were stale as to the question of whether any neuropathy limitations may have impaired the ability to walk.

ECF No. 9-1 at p. 29.

And, finally, Plaintiff contends that the ALJ failed to either include limitations in the RFC pertaining to Plaintiff’s hernias or to explain why she did not do so:

> [T]he ALJ did not consider the limitations of ventral/umbilical hernia. The ALJ found the hernia to be a non-severe impairment, but as noted above, an ALJ’s RFC determination must include any limitations posed by non-severe impairments. *Parker-Grose v. Astrue*, 462 F. App’x at 18. Although Dr. Naroditsky, Dr. Perle and Dr. Magurno all listed ventral and umbilical hernias as conditions affecting [Plaintiff’s] ability to lift and carry. The ALJ, by failing to accept their conclusions as to [Plaintiff’s] lifting abilities, essentially failed to consider the medical impact of those hernias on [Plaintiff’s] ability to lift and carry.

ECF No. 9-1 at p. 30.

The Commissioner disagrees and cross-moves for judgment on the pleadings, contending that the ALJ's decision is free of legal error and supported by substantial evidence. More specifically, the Commissioner maintains that the ALJ properly weighed the competing medical opinions, and that Plaintiff's claim to the contrary is really just an improper invitation for the court to re-weigh the evidence. On this point, the Commissioner contends that the ALJ's opinion-evidence findings and RFC finding are supported by the absence of greater positive findings in the medical records and by Plaintiff's activities of daily living. The Commissioner further asserts that the ALJ "adequately accounted for the effects of Plaintiff's diabetic neuropathy and hernia." ECF No. 12-1 at p. 2. For example, the Commissioner states: "The ALJ's consideration that Plaintiff's chiropractor recommended walking as treatment would account for the neuropathy and hernias." ECF No. 12-1 at p. 13. The Commissioner also contends that the opinions of Naroditsky and Abueg were not stale merely because they were written prior to receipt of evidence from Dr. Hatef concerning diabetic neuropathy, purportedly since "the podiatry notes do not indicate any significant deterioration that would raise doubts as to the reliability of the assessments of Drs. Naroditsky and Abueg[.]"). *Id*. at p. 17.[7]

[7] The Commissioner states: "The ALJ's consideration that Plaintiff's chiropractor recommended walking as treatment would account for the neuropathy and hernias." ECF No. 12-1 at p. 13. The Commissioner also asserts that the ALJ reasonably opted not to include any limitation for hernias in the RFC finding in part "given the utter lack of any significant treatment for hernias" in the record. ECF No. 12-1 at p. 17. However, both of those assertions by the Commissioner are improper *post hoc* rationalizations, since the ALJ herself did not even discuss Plaintiff's hernias. Furthermore, regarding the lack of treatment for Plaintiff's hernias, Plaintiff testified that her doctors were unwilling to perform surgery to repair the hernias due to her obesity.

On April 3, 2026, this action was transferred to the undersigned. ECF No. 18. The Court has carefully considered the parties' submissions, including Plaintiff's reply brief, and the relevant sections of the record.

DISCUSSION

Plaintiff primarily contends that the ALJ committed errors when evaluating the medical opinion evidence. The basic legal principles governing an ALJ's duty to evaluate the persuasiveness of medical opinions are clear:

> The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ is required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. § 416.920c(b)(2)[;20 C.F.R. § 404.1520c(b)(2)].[8]
>
> With regard to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1) )[;20 C.F.R. § 404.1520c(c)(1)]. The regulations provide that with regard to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 416.920c(c)(2)[;20 C.F.R. § 404.1520c(c)(2)].
>
> ***
>
> An ALJ's failure to explain the supportability and consistency of the medical opinions in the record constitutes procedural error. *See Estrella v. Berryhill*,

Consequently, the lack of treatment for the hernia condition does not nrcessarily imply that the hernias were insignificant, contrary to what the Commissioner implies.

[8] *See, Porteus v. O'Malley*, No. 23-969, 2024 WL 2180203, at *1 (2d Cir. May 15, 2024). ("The ALJ was only required to consider the submitted medical opinions based on the five factors set forth in the regulations and to explain how the two "most important" factors – supportability and consistency – applied to each opinion. See 20 C.F.R. § 404.1520c(b)(2) ("[ALJs] may, but are not required to, explain how [they] considered the [other] factors[.]").

> 925 F.3d 90, 96 (2d Cir. 2019); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, *2 (2d Cir. June 17, 2022) (summary order) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). However, "if 'a searching review of the record' assures [the court] 'that the substance of the [regulation] was not traversed,'" the court may affirm the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96 (*quoting Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004))).

*Jason A. L. v. Comm'r of Soc. Sec.*, No. 521CV477FJSTWD, 2022 WL 4354363, at *2 (N.D.N.Y. Sept. 20, 2022).

Significantly, when evaluating the consistency of medical opinion evidence, "an ALJ should not consider the persuasiveness of each medical opinion in a vacuum but must adequately account for the consistency of the various opinions with each other." *Maria M. v. Bisignano*, No. 3:25-CV-01448 (VAB), 2026 WL 2884104, at *5 (D. Conn. Sept. 25, 2026) (quoting *Jennifer G. v. Comm'r of Soc. Sec*., No. 5:22-CV-996 (MAD/ML), 2023 WL 8435991, at *8 (N.D.N.Y. Sept. 6, 2023) (collecting cases, other citations omitted). Here, the Court finds that the ALJ ran afoul of this rule, since she did not acknowledge that Abueg's opinion was inconsistent with the opinions Magurno, Naroditsky and Perle, all of which consistently agreed that Plaintiff could lift and carry less than what Abueg found.

Rather, the Court finds that the ALJ improperly considered each opinion in a vacuum. For example, when discussing Abueg's opinion, the ALJ stated that the opinion was consistent with certain "observations" by Magurno, without indicating that Abueg's opinion was inconsistent with Magurno's actual opinion. The ALJ also did not discuss whether Abueg's opinion was consistent with the opinions of Naroditsky and Perle. Tr. 19-20. Similarly, the ALJ discussed Magurno's opinion in a vacuum, without acknowledging

that, with regard to lifting and carrying, the opinion was more consistent with the opinions of Naroditsky and Perle than with the opinion of Abueg. Tr. 20. When considering Naroditsky's opinion, the ALJ remarked that, with regard to lifting and carrying, it was inconsistent with Abueg's opinion, again without acknowledging that Naroditsky's opinion was consistent with the opinions of Magurno and Perle. And, finally, regarding Perle's medical opinion, the ALJ asserted that it was not "consistent with other opinions of record," without acknowledging that Perle's opinion about Plaintiff's ability to lift and carry was actually consistent with the opinions of Magurno and Naroditsky. Tr. 22.

The Court therefore finds that the ALJ's failure to properly consider the consistency of the medical opinions with each other was a procedural error. Furthermore, the Court cannot say that the error was harmless since, as Plaintiff points out, "the outcome of this case likely hinged on the difference between the ability to lift 20 pounds versus the ability to lift only 10 pounds." Consequently, the Court finds that remand is required for further administrative proceedings on this point.

As part of such remand, the ALJ should explain the extent to which she finds the medical opinions credible insofar as they opine that Plaintiff's ability to lift and carry is affected by her hernias. On this point, Abueg's opinion does not mention Plaintiff's hernias, even when purporting to summarize the opinion of Dr. Magurno, which clearly referenced ventral and umbilical hernias. Meanwhile, Plaintiff's hernias appear to have prominently factored into the more restrictive opinions by Magurno, Naroditsky, and Perle. Beginning with Magurno, she noted that Plaintiff had ventral and umbilical hernias, and her finding of "marked limitations" for lifting and carrying seems to be directly related to such

conditions, since none of Magurno's other positive findings appear to relate to the ability to lift and carry. Naroditsky's report seems to have similarly interpreted Magurno's report in that fashion, since it limited Plaintiff to lifting no more than ten pounds because of "obesity" and "ventral/umbilical hernia," even though Plaintiff had "strength 5/5 in all areas." Tr. 139. And, consistent with the opinions of Magurno and Naroditsky, Perle indicated that Plaintiff's "ventral hernia" "limits physical activity." Tr. 657.[9]

As noted earlier, Plaintiff also maintains that in discounting the opinions of Magurno, Naroditsky and Perle, the ALJ relied in part on Plaintiff's purported ability to perform tasks that do not relate to her ability to perform the exertional requirements of light work. *See*, ECF No. at p. 21 ("[T]he activities of driving, rising from a chair, or living in a duplex do not implicate one's ability to lift, or provide medical evidence that [Plaintiff] possesses the physical ability to lift up to 20 pounds."); *see also*, *id*. at p. 22 (Indicating that the ALJ had improperly referenced "activities that were mostly irrelevant to lifting.").

It is of course true that when evaluating a claimant's RFC, an ALJ should not rely on medical findings, or on the claimant's ability to perform certain activities, that do not imply the ability to perform the requirements of work at a particular exertional level "on a regular and continuing basis; *i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule."[10] *Cf.*, *Britt v. Comm'r of Soc. Sec*., No. 19-CV-6451-LJV, 2020 WL 5077020, at

---

[9] As one reason for assigning greater weight to Abueg's opinion, the ALJ stated that Abueg's findings were "consistent with the claimant's . . . hernia." Tr. 20. However, it is unclear what the ALJ meant by that, since, again, Abueg's opinion did not mention Plaintiff's hernias. In any event, the ALJ did not explain how Abueg's finding that Plaintiff could lift twenty pounds was more "consistent with" Plaintiff's hernias than the more-restrictive opinions of Magurno, Naroditsky, and Perle.

[10] "RFC is the individual's maximum remaining ability to perform sustained work *on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule*." Titles II & Xvi: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of

*3 (W.D.N.Y. Aug. 27, 2020) ("[T]he ALJ discounted Dr. Zukas's opinion in part because "Dr. Toor's examination showing normal gait despite difficulty walking on heels and toes is inconsistent with [the] inability to stand or walk for two hours." Docket Item 7-2 at 58. But it is not at all clear how "showing a normal gait" in a short examination would say anything about Britt's ability to stand or walk for two hours."); *see also*, *Ahmed A. J. v. Saul*, No. 3:18-CV-00197, 2019 WL 4671513, at *6 (N.D.N.Y. Sept. 25, 2019) ("[I]t appears the ALJ reached the RFC conclusion . . . because Dr. Jindal found in June 2014 that Plaintiff had a "normal gait, decreased sensation, but full strength. Conservative pain management was advised." However, the ALJ does very little to equate these circumstances with Plaintiff's ability to stand or walk for up to two hours during an eight-hour work day. . . . [H]aving a normal gait with full strength during a medical examination, does not necessarily establish the ability to stand or walk for two hours during an eight hour day. Without an explanation of how Plaintiff's . . . having a normal gait during a physician's examination equates to the ability to stand and walk up to two hours a day, the Court is unable to conduct a meaningful review of whether the RFC is supported by substantial evidence.") (citations omitted); *Peterson v. Kijakazi*, No. 3:22-CV-00026 (VLB), 2023 WL 334379, at *10 (D. Conn. Jan. 20, 2023) ("The ALJ concluded that Dr. Ringel and Dr. Fette's findings were "not consistent with the findings for only trace edema and normal gait," but he did so without any explanation of how having a normal gait during a physician's examination equates to the ability to stand and walk up to four hours a day. Meanwhile, the medical record is replete with findings for fatigue, dyspnea, shortness of breath or shortness of

---

Sedentary Work, SSR 96-9P (S.S.A. July 2, 1996) (emphasis added).

breath on exertion, and dizziness, any of which might reasonably be expected to limit a person's capacity to stand or walk.") (citation and internal quotation marks omitted).

Upon remand, to the extent the ALJ relies on particular medical findings or on Plaintiff's ability to perform certain tasks, to either discount Plaintiff's credibility, discount the medical opinion evidence, or otherwise support the RFC finding, the ALJ should explain how such evidence relates to the ability to perform the exertional demands of work at that particular exertional level, and particularly the ability to lift and carry, "on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule." On this point the Court notes, again, that the opinions of Magurno, Naroditsky, and Perle regarding Plaintiff's ability to lift and carry appear to be related at least in part to Plaintiff's hernias, which are a defect in the abdominal wall that, on the one hand, presumably could limit a claimant's ability to lift without regard to any lack of strength in the extremities, while, on the other hand, would not necessarily limit the claimant from performing a wide variety of other activities.

Finally, Plaintiff also maintains that the ALJ erred by failing to "make any ruling or any significant discussion as to [Plaintiff's] diabetic neuropathy." Plaintiff asserts that this error is compounded by the fact that the medical opinions of Naroditsky and Abueg were stale inasmuch as they were given prior to receipt by the Commissioner of evidence from Dr. Hatef documenting Plaintiff's diabetic neuropathy.

The Court agrees that it is at least unclear whether the ALJ considered Plaintiff's diabetic neuropathy when making the RFC finding. For example, the ALJ's decision does not mention Hatef, Hatef's office notes, or Magurno's reference to Plaintiff's diabetic

neuropathy symptoms. Of course, the fact that an ALJ does not mention a particular piece of evidence does not mean that she did not consider it. Here, however, in addition to failing to mention such evidence, the ALJ made affirmative statements about Plaintiff's diabetes that appear to suggest she either did not consider Hatef's findings or improperly ignored them.[11] For example, when describing Plaintiff's diabetes as part of her RFC discussion, the ALJ concluded her discussion by stating, "The record shows that the claimant's diabetes mellitus has been described as being without complications," referring to an office note of Dr. Perle. Tr. 18.[12] However, while Perle did, at one point, describe Plaintiff's diabetes in those terms, she later referred Plaintiff to Dr. Hatef specifically for evaluation of Plaintiff's diabetic neuropathy symptoms, whereupon Hatef found evidence of such neuropathy bilaterally. Accordingly, the ALJ's description of Plaintiff's diabetes as "being without complications" appears incorrect. Similarly, when discussing Plaintiff's diabetes at step three of the sequential evaluation, the ALJ referenced SSR 14-2p and remarked that Plaintiff had "not exhibited *any* symptoms or experienced *any* complications resulting from the diabetes mellitus." Tr. 15 (emphasis added). However, that statement also appears to be inaccurate, since the complications of diabetes listed in SSR 14-2p include "numbness in the hands and feet" and "neuropathy," which are documented in Hatef's treatment notes. Accordingly, upon remand the ALJ should consider whether an updated medical opinion is required and clarify the extent to which she has considered

---

[11] The evidence of diabetic neuropathy is not limited to Hatef's notes. For example, on February 24, 2023, Perle noted that Plaintiff was being prescribed gabapentin/Neurontin for "diabetic polyneuropathy associated with type II diabetes." Tr. 723. The same note indicated that Plaintiff would "follow up with podiatry for neuropathy." Tr. 723.

[12] This description in Perle's office note was part of a boilerplate list of all Plaintiff's medical conditions.

Plaintiff's diabetic neuropathy (and hernias) in making her RFC determination.

CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is granted, Defendant's cross-motion for the same relief (ECF No. 12) is denied, and this matter is remanded to the Commissioner for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk is directed to enter judgment for Plaintiff and close the action.

So Ordered.

Dated: Rochester, New York
September 30, 2026

ENTER:

Charles J. Siragusa

CHARLES J. SIRAGUSA
United States District Judge